46 U.S. 410 (____)
5 How. 410
MALINDA FOX
v.
THE STATE OF OHIO.
Supreme Court of United States.

*411 The cause was argued by Mr. Convers, for the plaintiff in error, and Mr. Stanberry (Attorney-General of Ohio), for the State.
*432 Mr. Justice DANIEL delivered the opinion of the court.
This case comes before us on a writ of error to the Supreme Court of the State of Ohio, by whose judgment was affirmed the judgment of the Court of Common Pleas for the county of Morgan in that State, convicting the plaintiff of passing, with fraudulent intent, a base and counterfeit coin in the similitude of a good and legal silver dollar, and sentencing her for that offence to imprisonment and labor in the State penitentiary for three years.
The prosecution against the plaintiff occurred in virtue of a statute of Ohio of March 7th, 1835, and the particular clause on which the indictment was founded is in the following language, viz.:  "That if any person shall counterfeit any of the coins of gold, silver, or copper currently passing in this State, or shall alter or put off counterfeit coin or coins, knowing them to be such," &c., "every person so offending shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be imprisoned in the penitentiary and kept at hard labor not more than fifteen nor less than three years." As has been already stated, the plaintiff was convicted of the offence described in the statute, her sentence was affirmed by the Supreme Court of the State, and, with the view of testing the validity of the sentence, a writ of error to the latter court has been issued.
With the exceptions taken to the formality or technical accuracy of the pleadings pending the prosecution, this court can have nothing to do. The only question with which it can regularly deal in this case is the following, viz.:  Whether that portion of the statute of Ohio, under which the prosecution against the plaintiff has taken place, and, consequently, whether the conviction and sentence founded on *433 the statute, are consistent with or in contravention of the constitution of the United States, or of any law of the United States enacted in pursuance of the constitution? For the plaintiff, it is insisted that the statute of Ohio is repugnant to the fifth and sixth clauses of the eighth section of the first article of the constitution, which invest Congress with the power to coin money, regulate the value thereof and of foreign coin, and to provide for the punishment of counterfeiting the current coin of the United States; contending that these clauses embrace not only what their language directly imports, and all other offences which may be denominated offences against the coin itself, such as counterfeiting, scaling, or clipping it, or debasing it in any mode, but that they embrace other offences, such as frauds, cheats, or impositions between man and man by intentionally circulating or putting upon any person a base or simulated coin. On behalf of the State of Ohio, it is insisted that this is not the correct construction to be placed upon the clauses of the constitution in question, either by a natural and philological interpretation of their language, or by any real necessary for the attainment of their objects; and that if any act of Congress should be construed as asserting this meaning in the constitution, and as claiming from it the power contended for, it would not be a law passed in pursuance of the constitution, nor one deriving its authority regularly from that instrument.
We think it manifest that the language of the constitution, by its proper signification, is limited to the facts, or to the faculty in Congress of coining and of stamping the standard of value upon what the government creates or shall adopt, and of punishing the offence of producing a false representation of what may have been so created or adopted. The imposture of passing a false coin creates, produces, or alters nothing; it leaves the legal coin as it was,  affects its intrinsic value in no wise whatsoever. The criminality of this act consists in the obtaining for a false representative of the true coin that for which the true coin alone is the equivalent. There exists an obvious difference, not only in the description of these offences, but essentially also in their characters. The former is an offence directly against the government, by which individuals may be affected; the other is a private wrong, by which the government may be remotely, if it will in any degree, be reached. A material distinction has been recognized between the offences of counterfeiting the coin and of passing base coin by a government which may be deemed sufficiently jealous of its authority; sufficiently rigorous, too, in its penal code. Thus, in England, the counterfeiting of the coin is made high treason, whether it be uttered or not; but those who barely utter false money are neither guilty of treason nor of misprision of treason. 1 Hawkins's Pleas of the Crown, 20. Again (1 East's Crown Law, 178), if A. counterfeit the gold or silver coin, and by agreement before such counterfeiting B is to receive and vent the money, he is an aider and abettor to the *434 act itself of counterfeiting, and consequently a principal traitor within the law. But if he had merely vented the money for his own private benefit, knowing it to be false, in fraud of any person, he was only liable to be punished as for a cheat and misdemeanour, &c. These citations from approved English treatises on criminal law are adduced to show, in addition to the obvious meaning of the words of the constitution, what has been the adjudged and established import of the phrase counterfeiting the coin, and to what description of acts that phrase is restricted.
It would follow from these views, that if within the power conferred by the clauses of the constitution above quoted can be drawn the power to punish a private cheat effected by means of a base dollar, that power certainly cannot be deduced from either the common sense or the adjudicated meaning of the language used in the constitution, or from any apparent or probable conflict which might arise between the federal and State authorities, operating each upon these distinct characters of offence. If any such conflict can be apprehended, it must be from some remote, and obscure, and scarcely comprehensible possibility, which can never constitute an objection to a just and necessary State power. The punishment of a cheat or a misdemeanour practised within the State, and against those whom she is bound to protect, is peculiarly and appropriately within her functions and duties, and it is difficult to imagine an interference with those duties and functions which would be regular or justifiable. It has been objected on behalf of the plaintiff in error, that if the States could inflict penalties for the offence of passing base coin, and the federal government should denounce a penalty against the same act, an individual under these separate jurisdictions might be liable to be twice punished for the one and the same crime, and that this would be in violation of the fifth article of the amendments to the constitution, declaring that no person shall be subject for the same offence to be twice put in jeopardy of life or limb. Conceding for the present that Congress should undertake, and could rightfully undertake, to punish a cheat perpetrated between citizens of a State because an instrument in effecting that cheat was a counterfeited coin of the United States, the force of the objection sought to be deduced from the position assumed is not perceived; for the position is itself without real foundation. The prohibition alluded to as contained in the amendments to the constitution, as well as others with which it is associated in those articles, were not designed as limits upon the State governments in reference to their own citizens. They are exclusively restrictions upon federal power, intended to prevent interference with the rights of the States, and of their citizens. Such has been the interpretation given to those amendments by this court, in the case of Barron v. The Mayor and City Council of Baltimore, 7 Peters, 243; and such indeed is the only rational and intelligible *435 interpretation which those amendments can bear, since it is neither probable nor credible that the States should have anxiously insisted to ingraft upon the federal constitution restrictions upon their own authority,  restrictions which some of the States regarded as the sine qua non of its adoption by them. It is almost certain, that, in the benignant spirit in which the institutions both of the State and federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor. But were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion, that offences falling within the competency of different authorities to restrain or punish them would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration. The particular offence described in the statute of Ohio, and charged in the indictment against the plaintiff in error, is deemed by this court to be clearly within the rightful power and jurisdiction of the State. So far, then, neither the statute in question, nor the conviction and sentence founded upon it, can be held as violating either the constitution or any law of the United States made in pursuance thereof. The judgment of the Supreme Court of the State of Ohio, affirming that of the Court of Common Pleas, is therefore in all things affirmed.
Mr. Justice McLEAN.
I dissent from the opinion of the court, and, as this is a constitutional question, I will state the reasons of my dissent.
The defendant in the State court was indicted and convicted of passing "a certain piece of false, base, counterfeit coin, forged and counterfeited to the likeness and similitude of the good and legal silver coin, currently passing in the State of Ohio, called a dollar." This is made an offence by the law of Ohio, and punished by imprisonment in the penitentiary, and being kept at hard labor, not more than fifteen, nor less than three years. The defendant was sentenced to imprisonment at hard labor for three years.
The act of Congress of the 3d of March, 1825, punishes the same offence, "by a fine not exceeding five thousand dollars, and by imprisonment and confinement to hard labor not exceeding ten years."
The eighth article of the constitution gives power to Congress "to coin money, regulate the value thereof, and of foreign coin." Also, "to provide for the punishment of counterfeiting the securities and current coin of the United States."
Jurisdiction is taken in this case, on the ground that the law under which the defendant in the State court was sentenced is repugnant *436 to the constitution of the United States, and the above-cited act of Congress.
Objection is made to the sufficiency of the description of the counterfeit coin alleged to have been passed. But I think the indictment, although not technical in this averment, is maintainable. The false coin is alleged to be of the similitude "of the good and legal silver coin, currently passing in the State of Ohio, called a dollar." The words "legal," "currently passing," and "dollar," are significant, and must be held to be the coin made legal and current by act of Congress, and that the denomination of a dollar, so connected, is a coin legal and current.
The power to "coin money, regulate the value thereof and of foreign coin," vested by the constitution in the federal government, is an exclusive power. It is expressly inhibited to the States. And the power to punish for counterfeiting the coin is also expressly vested in Congress. This power is not inhibited to the States in terms, but this may inferred from the nature of the power. Two governments acting independently of each other cannot exercise the same power for the same object. It would be a contradiction in terms to say, for instance, that the federal government may coin money and regulate its value, and that the same thing may be done by the State governments. Two governments might act on these subjects, if uniformity in the coin and its value were not indispensable. There can be no independent action without a freedom of the will, and in this view how can two governments do the same thing, not a similar thing? The coin must be the same and the value the same; the regulation must be the result of the same discretion, and not of distinct and independent judgments. This power, therefore, cannot be exercised by two governments.
The act of Congress of the 3d of March, 1825, "more effectually to provide for the punishment of certain crimes against the United States," &c., provides, by the twenty-sixth section, that "nothing in that act shall be construed to deprive the courts of the individual States of jurisdiction, under the laws of the several States, over offences made punishable by that act."
Offences are made punishable in that act committed on the high seas, in navy-yards, and other places where the United States have exclusive jurisdiction, and also for counterfeiting the coin of the United States. Now it must be admitted that Congress cannot cede any portion of that jurisdiction which the constitution has vested in the federal government. And it is equally obvious, that a State cannot punish offences committed on the high seas, or in any place beyond its limits. The above section, therefore, cannot extend to offences without the State, nor to State statutes subsequently enacted. It is a settled rule of construction, that the statutes of a State subsequently enacted must be expressly adopted by Congress. The statute under which the defendant below was *437 indicted was passed the 7th of March, 1835, so that no force could be given to it by the act of Congress of 1825.
That Congress have power to provide for the punishment of this offence seems to admit of no doubt. Coin is the creation of the federal government; and the power to punish the counterfeiting of this coin is expressly given in the constitution. And these powers must be incomplete, and in a great degree inoperative, unless Congress can also exercise the power to punish the passing of counterfeit coin. Such a power has been exercised by the federal government for many years, and its constitutionality has never been questioned.
Counterfeiting the notes of the Bank of the United States was made an offence by Congress, and punishments were inflicted under that law. This power was never doubted by any one who believed that Congress had power to establish a national bank. It seemed to be the necessary result of the power to establish the bank. For the principal power was in a great degree a nullity, unless Congress had power to protect that which they had created. I speak not of the power to establish the bank, but of the power which necessarily resulted from the exercise of that power. And if this power to protect the notes of the bank was necessary, the power to protect the coin is still clearer, as there can be no question as to the constitutionality of the act of Congress to establish the coin and punish the act of counterfeiting it. In relation to the bank, the principal power is doubted by many, but in relation to the coinage there can be no doubt. The protection of the coin was at least as necessary as the protection of the notes of the bank. But it cannot be necessary further to illustrate the power of Congress to punish the passing of counterfeit coin. It is a power which seems never to have been doubted.
Under the power "to establish post-offices and post-roads," Congress have provided for punishing violations of the mail, regulated the duties of the agents of the post-office department, required, under heavy penalties, ferry-keepers to pass over the mail without delay, &c. These and numerous other regulations are necessary to carry out the principal power. And so in relation to the coins. Is it reasonable to suppose that Congress, having power to coin money, and to punish for counterfeiting the coin, should have no power to punish for passing counterfeit coin? Is this coin created by the federal government, and thrown upon the community, without power to prevent a fraudulent use of it? The powers of the general government were not delegated in this manner. Where a principal power is clearly delegated, it includes all powers necessary to give effect to the principal power. This is not controverted, it is believed, by any one. It would seem, therefore, that the power to punish for passing counterfeit coin is clearly in the federal government.
*438 Can this same power be exercised by a State. I think it cannot. Formerly Congress provided that the State courts should have jurisdiction of certain offences under their laws, and in several States indictments were prosecuted, and to a limited extent the laws of the Union were enforced by the States. But some States very properly refused to exercise the jurisdiction in such cases, and it was too clear for argument that Congress could not impose such duties on State courts. And this doctrine is now universally established. Consequently no State court will undertake to enforce the criminal law of the Union, except as regards the arrest of persons charged under such law. It is therefore clear, that the same power cannot be exercised by a State court as is exercised by the courts of the United States, in giving effect to their criminal laws.
In some cases the acts of Congress adopt the laws of the States on particular subjects; but even these, so far as the United States are concerned, become their laws by adoption, as fully as if they had been originated by them, and cannot be considered in any different light than as if they had been so passed.
If a State punish acts which are made penal by an act of Congress, the power cannot be derived from the act of Congress, but from the laws of the State. And in this light must the act of Ohio be considered, under which the defendant below was punished.
The act of Ohio does not prescribe the same punishment for passing counterfeit coin as the act of Congress. This State law must stand upon the power of the State to punish an act over which the law of Congress extends and punishes. The passage of counterfeit coin is said to be a fraud which the State may punish.
With the same propriety, it is supposed that a State may punish for larceny a person who steals money from the mail or a post-office. And yet a jurisdiction over this offence, it is believed, has not been exercised by a State.
The postmaster or the carrier, as the case may be, has a temporary possession of letters, but the money abstracted from a letter in the mail or in the post-office may be laid in the owner, who, in contemplation of law, retains the right of property until the money shall be received by the person to whom it is forwarded.
Many, if not all, of the States punish for counterfeiting the coin of the United States, while the same offence is punished by act of Congress. And, as before stated, the constitution vests this power expressly in Congress. Now in these two cases, viz. counterfeiting the coin, and passing counterfeit coin, the same act is punished by the federal and State governments. Each government has defined the crime and affixed the punishment, without reference to the action of any other jurisdiction. And the question arises whether, in such cases, where the federal government has an undoubted jurisdiction, a State government can punish the same act. The point is not *439 whether a State may not punish an offence under an act of Congress, but whether the State may inflict, by virtue of its own sovereignty, punishment for the same act, as an offence against the State, which the federal government may constitutionally punish.
If this be so, it is a great defect in our system. For the punishment under the State law would be no bar to a prosecution under the law of Congress. And to punish the same act by the two governments would violate, not only the common principles of humanity, but would be repugnant to the nature of both governments. If there were a concurrent power in both governments to punish the same act, a conviction under the laws of either could be pleaded in bar to a prosecution by the other. But it is not pretended that the conviction of Malinda Fox, under the State law, is a bar to a prosecution under the law of Congress. Each government, in prescribing the punishment, was governed by the nature of the offence, and must be supposed to have acted in reference to its own sovereignty.
There is no principle better established by the common law, none more fully recognized in the federal and State constitutions, than that an individual shall not be put in jeopardy twice for the same offence. This, it is true, applies to the respective governments; but its spirit applies with equal force against a double punishment, for the same act, by a State and the federal government.
Mr. Hamilton, in the thirty-second number of The Federalist, says there is an exclusive delegation of power by the States to the federal government in three cases:  1. Where in express terms an exclusive authority is granted; 2. Where the power granted is inhibited to the States; and 3. Where the exercise of an authority granted to the Union by a State would be "contradictory and repugnant."
The power in Congress to punish for counterfeiting the coin, and also for passing it, is exercised under the third head. That a State should punish for doing that which an act of Congress punishes, is contradictory and repugnant. This is clearly the case, whether we regard the nature of the power or the infliction of the punishment. As well might a State punish for treason against the United States, as for the offence of passing counterfeit coin. No government could exist without the power to punish rebellion against its sovereignty. Nor can a government protect the coin which it creates, unless it has power to punish for counterfeiting or passing it. If it has not power to protect the constitutional currency which it establishes, it is the only exception in the exercise of federal powers.
There can be no greater mistake than to suppose that the federal government, in carrying out any of its supreme functions, is made dependent on the State governments. The federal is a limited government, exercising enumerated powers; but the powers given are *440 supreme and independent. If this were not the case, it could not be called a general government. Nothing can be more repugnant or contradictory than two punishments for the same act. It would be a mockery of justice and a reproach to civilization. It would bring our system of government into merited contempt. The sixth article of the constitution preserves the government from so great a reproach. It declares, that "this constitution, and the laws of the United States made in pursuance thereof, &c., shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the constitution or laws of any State to the contrary notwithstanding." That the act of Congress which punishes the passing of counterfeit coin is constitutional, would seem to admit of no doubt. And if that act be constitutional, it is the supreme law of the land; and any State law which is repugnant to it is void. As there cannot, in the nature of things, be two punishments for the same act, it follows that the power to punish being in the general government, it does not exist in the States. Such a power in a State is repugnant in its existence and in its exercise to the federal power. They cannot both stand.
I stand alone in this view, but I have the satisfaction to know, that the lamented Justice Story, when this case was discussed by the judges the last term that he attended the Supreme Court, and, if I mistake not, one of the last cases which was discussed by him in consultation, coincided with the views here presented. But at that time, on account of the diversity of opinion among the judges present, and the absence of others, a majority of them being required by a rule of the court, in constitutional questions, to make a decision, a reargument of the cause was ordered. I think the judgment of the State court should be reversed.

Order.
This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court of the State of Ohio, affirming that of the Court of Common Pleas, in this cause be and the same is hereby in all things affirmed, with costs.